IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TRAQUAN OSBORN | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:19-CV-00663-DGK |
| CHARTER COMMUNICATIONS, INC. | ) |
| Defendant. | ) |

**DEFENDANT'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS
AND COMPEL ARBITRATION OR, IN THE ALTERNATIVE,
TO STAY PROCEEDINGS PENDING ARBITRATION**

Plaintiff Traquan Osborn applied for a position with Defendant on or around February 6, 2018. Plaintiff was not the most qualified applicant for the position, and was not selected. As explained below, through the application process, Plaintiff voluntarily entered into a Mutual Arbitration Agreement ("Arbitration Agreement") with Charter that imposes a mutual obligation to arbitrate claims arising out of his application for employment, including race-based discrimination claims. Rather than comply with the Arbitration Agreement, however, Plaintiff filed a Petition in the Circuit Court of Jackson County, Missouri accusing Charter of race discrimination in violation of the Missouri Human Rights Act ("MHRA").[1]

Because a valid and enforceable agreement to arbitrate exists, and this dispute falls squarely within the scope of that agreement, the Federal Arbitration Act requires it be resolved in arbitration pursuant to the terms of the parties' Arbitration Agreement. Charter therefore moves this Court for an order compelling arbitration of all claims based on Plaintiff's application for employment with Charter, and dismissing this lawsuit for lack of subject matter jurisdiction.

---

[1] Charter removed this action to this Court on August 22, 2019.

Alternatively, Charter moves the Court for an order compelling arbitration and staying these proceedings pending arbitration. Indeed, multiple courts have enforced the same Arbitration Agreement at issue here, including but not limited to:

- *Osborne v. Charter Communications, Inc.*, Case No. 4:18-cv-01801-HEA, Dkt. No. 10 (E.D. Mo. May 17, 2019) (granting Charter's motion to dismiss and compel arbitration);

- *Moorman et al. v. Charter Communications, Inc. et al.*, Case No. 3:18-cv-00820-wmc, Dkt. No. 50 (W.D. Wis. May 1, 2019) (granting Charter's motion to compel arbitration);

- *Castorena et al. v. Charter Communications, LLC et al.*, Case No. 2:18-cv-07981-JFW-KS, Dkt. No. 41 (C.D. Cal. Dec. 14, 2018) (granting Charter's motion to dismiss and compel arbitration);

- *Scarpitti v. Charter Communications, Inc.*, Case No. 18-cv-02133-REB-MEH, Dkt. No. 15 (D. Colo. Dec. 7, 2018) (granting Charter's motion to compel arbitration).

*See* Orders, attached as Exhibit 1.

## I. RELEVANT FACTUAL BACKGROUND

### A. Plaintiff's Application for Employment

Charter is a telecommunications company that offers advanced video, high speed internet, and telephone services to business and residential customers in forty-one states. As stated above, Plaintiff applied for a position with Charter, but was not selected.

### B. The Parties Entered Into an Enforceable Arbitration Agreement

#### 1. Charter's Solution Channel Arbitration Agreement

Charter implemented its employment based arbitration agreement through a program called Solution Channel, which was implemented on October 6, 2017. *See* Declaration of Dan Vasey ("Vasey Decl.") at ¶ 4, attached as Exhibit 2. As of October 6, 2017, all Applicants who apply for a position with Charter are required to agree to participate in the Program in order to submit their application for consideration. External Applicants apply online for positions within

2

DocID: 4812-1770-9474.1
Case 4:19-cv-00663-DGK   Document 8   Filed 09/19/19   Page 2 of 11

Charter, and submit documents and information in support of their application through BrassRing, a link provided during the application process. Vasey Decl. at ¶¶5, 6. In BrassRing, Applicants are presented with Charter's Solution Channel webpage, which provides that "Charter requires that all legal disputes involving employment with Charter *or application for employment with Charter*, be resolved through binding arbitration." Vasey Decl. at ¶¶ 7, 8; Vasey Decl. Ex. A (emphasis added). The webpage provides further that "[a]ny person who submits an application for consideration by Charter agrees to be bound by the terms of Charter's Mutual Arbitration Agreement" and that "[b]y submitting an application for consideration you are agreeing to be bound by the Agreement." *Id.* The webpage also includes references and links to Charter's Mutual Arbitration Agreement and Solution Channel's Program Guidelines. Vasey Decl. at ¶ 9; Vasey Decl. Ex. B.

As indicated, Applicants are required to agree to be bound by the Program in order to proceed with their application, and they do so by selecting the "I agree" radio button on the Solution Channel webpage and selecting the button "Save and continue." Vasey Decl. at ¶ 11. Charter makes this requirement abundantly clear, as the webpage specifically states that "If you do not agree (to the Program) you will be removing yourself from the application process, *and Charter will not consider your application for employment*." Vasey Decl. at ¶¶ 12-15; Vasey Decl. Ex. C (emphasis added). Applicants may save their application while they review the Mutual Arbitration Agreement and Solution Channel Program Guidelines, and return to the application once they are ready to make a decision regarding the Program. Vasey Decl. at ¶ 14.

Charter maintains a record of Applicants who have agreed to participate in the Program, and who have submitted an application through BrassRing. Vasey Decl. at ¶ 15. Plaintiff agreed to participate in the Program on February 6, 2018. Vasey Decl. at ¶ 16. A true and accurate copy

of Plaintiff's application, which demonstrates on the last page that he agreed to participate in the Program, is attached. Vasey Decl. at ¶ 16; Vasey Decl. Ex. D.

### 2. The Arbitration Agreement Requires Plaintiff to Arbitrate His Employment Disputes with Charter

Under the Arbitration Agreement, Plaintiff and Charter: "mutually agree that, as a condition of Charter considering [Plaintiff's] application for employment . . . with Charter, any dispute arising out of or relating to [Plaintiff's] pre-employment application . . . must be resolved through binding arbitration." Vasey Decl. Ex. B., ¶ A. Such employment disputes include the following:

> all disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as . . . unlawful discrimination or harassment (including such claims based on . . . race, . . . and any other prohibited grounds), [or] claims for unlawful retaliation . . . .

Vasey Decl. Ex. B., ¶ B.

Thus, there is no question that the Arbitration Agreement is applicable to Plaintiff's race discrimination claim.[2]

## II. ARGUMENT

Plaintiff entered into a valid and enforceable agreement to arbitrate with Charter, and that agreement encompasses all of Plaintiff's claims in this litigation. Despite this Arbitration Agreement, Plaintiff has not agreed to dismiss his lawsuit. Therefore, pursuant to the Federal Arbitration Act ("FAA"), this Court must compel Plaintiff to arbitrate his claims, and either dismiss or stay this litigation.

---

[2] Counsel for Charter has discussed Plaintiff's obligations under the Arbitration Agreement with Counsel for Plaintiff. As of today, Plaintiff has not agreed to dismiss his lawsuit and arbitrate his claims.

A.  The FAA Governs the Parties' Arbitration Agreement

The FAA "establishes a liberal federal policy favoring arbitration agreements." *M.A. Moretenson Co. v. Sanders Concrete Co., Inc.,* 676 F.3d. 1153, 1156 (8th Cir. 2012). "The Supreme Court has repeatedly noted that the Federal Arbitration Act was designed to combat longstanding hostility to arbitration by establishing a liberal federal policy favoring arbitration agreements." *Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A.*, 334 F.3d 721, 725 (8th Cir. 2003) (*quoting Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Under the FAA, any doubts regarding the scope of arbitrable issues should be resolved in favor of arbitration. *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001). This liberal policy includes employment-related claims. *Id*. at 947.

The FAA provides that any "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held that the term "involving commerce" is interpreted broadly, so that the FAA governs any arbitration agreement that affects commerce in any way. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-77 (1995); *see also Perry v. Thomas*, 482 U.S. 483, 490 (1987) (stating the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause"). Specifically, the FAA governs arbitration agreements between local employees and nationwide companies. *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121-

124 (2001) (arbitration agreement between local store manager and nationwide retailer subject to FAA).

The FAA preempts all conflicting state laws intended to frustrate the purpose of the FAA (*e.g.*, laws that apply stricter requirements to arbitration agreements than contracts generally). *Preston v. Ferrer*, 552 U.S. 346, 353 (2008) ("The FAA's displacement of conflicting state law is now well-established, and has been repeatedly reaffirmed."); *Perry v. Thomas*, 482 U.S. 483, 492-93, n. 9 (1987). However, like the FAA, Missouri law *favors* arbitration as a method of dispute resolution. *Riley v. Lucas Lofts Inv'rs, LLC*, 412 S.W.3d 285, 290 (E.D. Mo. 2013) ("Under Missouri law, arbitration proceedings are favored and encouraged to further the public policy of dispute resolution without resort to the courts."); *McCracken v. Green Tree Servicing, LLC*, 279 S.W.3d 226, 227 (Mo. Ct. App. 2009) (arbitration proceedings favored and encouraged under Missouri law). Moreover, the parties' Arbitration Agreement specifically states that it is governed by the FAA. Vasey Decl. Ex. B, ¶ R.

Because the FAA applies, this Court must only resolve two questions: whether a valid agreement to arbitrate exists, and whether this dispute is within the scope of that agreement. *Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011) ("[W]hen deciding whether to compel arbitration, a court asks whether a valid agreement to arbitrate exists, and if so, whether the dispute falls within the scope of that agreement."). In this case, both questions are answered affirmatively. As a result, the Court must compel Plaintiff to arbitrate her claims.

### B. A Valid Agreement to Arbitrate Exists

Courts look to state contract law to determine whether an enforceable arbitration agreement exists. *M.A. Mortenson Co.*, 676 F.3d at 1156; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (when deciding whether an arbitration agreement is valid in the context of the FAA, courts should apply ordinary state-law principles that govern the formation of contracts). Under Missouri law, the basic elements of a contract are offer, acceptance of that offer, and consideration to support the contract. *Karzon v. AT&T, Inc.*, No. 4:13–CV–2202 CEJ, 2014 WL 51331, at *2 (E.D. Mo. Jan. 7, 2014). All three elements exist here.

#### 1. The Parties Demonstrated Offer and Acceptance

"An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Walker v. Rogers*, 182 S.W.3d 761, 767 (Mo. Ct. App. 2006) (*quoting* Restatement (Second) of Contracts, § 24 (1981)) (internal quotation omitted); *see also Agri Process Innovations, Inc. v. Envirotrol, Inc.*, 338 S.W.3d 381, 390 (Mo. Ct. App. 2011). Acceptance is "a manifestation of assent to the terms . . . made by the offeree in a manner invited or required by the offer."

In this case, Charter offered to enter into a mutual agreement to arbitrate employment application-related claims with Plaintiff, and Plaintiff accepted Charter's offer by agreeing and continuing with his application. Charter made its offer clear to Plaintiff, and Plaintiff's acceptance thereof was equally clear. Indeed, Plaintiff proceeded with pursuing a position with Charter after Charter told him plainly that "[i]f you do not agree (to the Program) you will be removing yourself from the application process, ***and Charter will not consider your application for employment***." Vasey Decl. at ¶¶ 12-15; Vasey Decl. Ex. C (emphasis added).

7

DocID: 4812-1770-9474.1

## 2. The Arbitration Agreement is Supported by Consideration

There can be no real dispute that the Arbitration Agreement is supported by adequate consideration. It is well settled that mutual promises to arbitrate claims constitute sufficient consideration to support an arbitration agreement under Missouri law. *See Green v. Broker Sols., Inc.*, No. 4:17CV844RLW, 2017 WL 2633506, at *2 (E.D. Mo. June 16, 2017) (compelling arbitration based on mutual promises between employee and employer to arbitrate employment disputes); *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 809 (Mo. banc. 2015) (plaintiff's argument that agreement to arbitrate lacked consideration failed where both parties had promised to refer disputes to arbitration); *McIntosh v. Tenet Health Sys. Hosps.*, 48 S.W.3d 85, 89 (Mo. Ct. App. 2001) (enforcing arbitration agreement containing mutual promises to arbitrate disputes).

Here, the Arbitration Agreement contains identical, mutual promises to arbitrate employment-related disputes. Under the Arbitration Agreement, Plaintiff and Charter "mutually agree that, as a condition of Charter considering [Plaintiff's] application for employment with Charter . . . any dispute arising out of or relating to [Plaintiff's] pre-employment application . . . must be resolved through binding arbitration . . . ." Vasey Decl. Ex. B. Charter has not reserved for itself any rights that would render its promise to arbitrate illusory. The parties' promises to arbitrate are mutual, and thus provide adequate consideration for the Arbitration Agreement.

Because there existed an offer, an acceptance of this offer, and consideration in this case, the parties' Arbitration Agreement is valid and enforceable, and the Court is required by law to enforce it.

## C. Plaintiff's Claims are Covered by the Arbitration Agreement

In determining whether Plaintiff's claims are subject to arbitration, the threshold inquiry is an analysis of the contractual language. *E.E.O.C. v. Waffle House*, 534 U.S. 279, 289 (2002).

The Arbitration Agreement provides that "any dispute arising out of or relating to [Plaintiff's] pre-employment application . . . with Charter" is subject to arbitration. Vasey Decl. Ex. B., ¶ A. In fact, the Arbitration Agreement specifically states that unlawful race discrimination claims "will be submitted to arbitration in accordance with this Agreement. Vasey Decl. Ex. B., ¶ B. Here, Plaintiff's claims are based solely on unlawful race discrimination that allegedly occurred when Charter decided not to hire him. Thus, there is no question that the Agreement encompasses every claim that Plaintiff seeks to bring against Charter in this litigation.

Because Plaintiff agreed to submit any claims arising from his application for employment to binding arbitration in a valid and enforceable contract, both questions for the Court's determination are answered in Charter's favor. The Court is therefore required to compel arbitration of Plaintiff's claims.

### D. Dismissal of This Action is Proper

As the Eighth Circuit has explained, this Court may dismiss this action rather than stay it where it is clear the entire controversy will be resolved by arbitration. *Green v. SuperShuttle Int'l., Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011); *Iappini v. Silverleaf Resorts, Inc.*, 116 F. Supp.3d 932, 943 (E.D. Mo. 2015) (where all claims against all parties are subject to arbitration, dismissal of action is proper). Because the Court must compel all of Plaintiff's claims to arbitration, dismissal of this case is proper. In the alternative, the Court should stay all further proceedings in this Court pending arbitration.

### E. Charter is Entitled to Costs and Fees

Despite his knowledge and acceptance of the Arbitration Agreement, Plaintiff unreasonably and vexatiously filed this lawsuit. Therefore, Charter is entitled to an award of the reasonable costs and attorneys' fees it has incurred in bringing this Motion. Fed. R. Civ. P.

9
DocID: 4812-1770-9474.1
Case 4:19-cv-00663-DGK   Document 8   Filed 09/19/19   Page 9 of 11

54(d)(1) (costs other than attorneys' fees shall be allowed as a matter of course to the prevailing party); 28 U.S.C. § 1927.

## II. CONCLUSION

For the reasons set forth above, Charter respectfully requests that the Court enforce the Arbitration Agreement and compel all of Plaintiff's claims against Charter to arbitration. Charter further requests that the Court enter an order dismissing this action, or, alternatively, staying this action pending arbitration of Plaintiff's claims.

Respectfully Submitted,

*/s/ Benjamin A. McMillen*
Benjamin A. McMillen          Bar #63086
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
ben.mcmillen@huschblackwell.com

*/s/ Anthony G. Grice*
Anthony G. Grice          Bar #61929
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
Telephone: (314) 480-1500
Facsimile: (314) 480-1501
anthony.grice@huschblackwell.com

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

This is to certify that on the 19th day of September 2019, a copy of the above and foregoing was served via the Court's electronic (ECF) notification system to:

Henry W. Tanner, Jr.
The Law Firm of Henry Tanner LLC
1432 E. 49th Terrace
Kansas City, MO 64110
henry@htannerlaw.com

*Attorney for Plaintiff*

          /s/ *Benjamin A. McMillen*
          **Attorney for Defendant**