UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CANDACE OSBORNE,                        )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        CASE NO 4:18CV1801  HEA
                                        )
CHARTER COMMUNICATIONS, INC.,           )
                                        )
            Defendant.                  )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss and
Compel Arbitration or in the Alternative, Stay Proceedings Pending Arbitration
[Doc 7].  Plaintiff did not file an opposition to the Motion, however, prior to the
filing of the Motion, Plaintiff filed a "Memorandum for Clerk" wherein she details
her position regarding arbitration.  For the reasons set forth below, the Motion to
Compel Arbitration is granted.

### Facts and Background

Plaintiff filed this action *pro se* against Defendant on October 23, 2018,
alleging that her employment with Defendant was terminated in violation of Title
VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et* seq., based
on her sex.

# EXHIBIT 1

Defendant has submitted the Affidavit of Tammie Knapper, Director, HR Technology for Charter Communications, LLC which sets out the following:

Solution Channel is Charter's employment-based legal dispute resolution program ("the Program"). On October 6, 2017, Charter announced the Program by email to all non-union below the level of Executive Vice President, who were active, or who were not on a leave of absence, on that date (hereinafter "Employees"). Employees received the email announcement from Paul Marchand, Executive Vice President, Human Resources, at the Charter work email address assigned to them.

The Solution Channel Announcement indicated to Employees that they would be enrolled in the Program unless they opted out of the Program within 30 days. That 30-day period expired on November 5, 2017. The Solution Channel Announcement stated in part:

> Unless you opt out of participating in *Solution Channel* within the next 30 days, you will be enrolled. Instructions for opting out of *Solution Channel* are also located on Panorama.

The Solution Channel Announcement included a link to the Solution Channel web page located on the Charter intranet site accessible to Employees, named *Panorama.* The Solution Channel web page was accessible to the Employees on Charter's network, and included additional information regarding the Program.

The Solution Channel web page accessible to Employees on *Panorama* included a reference and link to Charter's Mutual Arbitration Agreement. The

- 2 -

Solution Channel web page accessible to Employees on *Panorama* also included the following information:

### Opting Out of Solution Channel

> If you do not opt out of Solution Channel within the designated time, you will be automatically enrolled in Solution Channel and considered to have consented to the terms of the Mutual Arbitration Agreement at that time. To opt-out of Solution Channel, please **click here.** In the new window that will open, click Main Menu->Self-Service->Solution Channel.

Employees who wished to learn more about opting out of the Program could select the **"click here"** link, which launched the opening of the PeopleSoft sign-in web page. Employees who signed into PeopleSoft using their regular network credentials could select "Self Service" from the main menu on the PeopleSoft home page, and then select "Solution Channel" from the SelfService menu. By selecting "Solution Channel," Employees would land on a page within PeopleSoft, at which they could opt out of the Program (the "PeopleSoft Solution Channel Page").

If Employees wished to opt out of the Program, they checked the box next to the phrase "I want to opt out of Solution Channel", entered their name in an adjacent text field, and clicked "SAVE." Employees had the option of printing this page for their records.

Employees who opted out of the Program by following the steps received an email from Charter confirming that they exercised their right to opt out of the

Program. Employees who did not opt out of the Program by following the steps described in paragraph 14 on or before November 5, 2017, were enrolled in the Program. These enrolled Employees could then view their enrollment status in PeopleSoft by accessing PeopleSoft, selecting "Self Service" from the main menu on the PeopleSoft home page, and then selecting "Solution Channel" from the Self Service menu.

After November 5, 2017, Employees could no longer use the PeopleSoft Solution Channel Page to opt out of the Program.

Charter maintains within PeopleSoft a record of Employees who opted out of the Program between October 6 and November 5, 2017.

Ms. Knapper affirms that she has access to and has reviewed the dates of employment of Plaintiff in PeopleSoft, and confirmed that she was an employee of Charter on October 6, 2017. She also has access to and reviewed the list of Employees to whom the Solution Channel Announcement was emailed on October 6, 2017, and has confirmed that Plaintiff was included in this distribution list.

Ms. Knapper has also reviewed Charter's record of Employees who opted out of the Program between October 6 and November 5, 2017, and has confirmed that Plaintiff did not opt out of the Program during that period.

- 4 -

Defendants move to compel arbitration and dismiss, alternatively, Defendants seek a stay of this action pending arbitration. Plaintiff does not dispute Ms. Knapper's averments, but argues in her "Memorandum" that she was not given a copy of the Employee Handbook after her employment was terminated.

Under the Program, Plaintiff and Defendant "mutually agree[d] that, as a condition… of [Plaintiff's] employment, with [Defendant], any dispute arising out of or relating to [Plaintiff's]… employment with [Defendant] or the termination of that relationship, …must be resolved through binding arbitration." These disputes include:

> All disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which [Plaintiff] or [Defendant] have alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as…unlawful discrimination or harassment (including such claims based on …sex, … and any other prohibited grounds), [or] claims for unlawful retaliation…

### Considerations to Compel Arbitration

Before compelling arbitration, a district court must determine (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement. *Robinson v. EOR-ARK, LLC,* 841 F.3d 781, 783 (8th Cir. 2016). Any doubts raised in construing contract language on arbitrability should be resolved in favor of arbitration. *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 795 (8th Cir. 2005).

Under Section 2 of the Federal Arbitration Act (FAA), "written arbitration agreements [are] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." *Anderson v. Carlisle*, 129 S.Ct. 1896, 1901 (2009). Section 2 "creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts to place such agreements upon the same footing as other contracts." *Id.* (quotations omitted). "Section 3, in turn, allows litigants already in federal court to invoke agreements made enforceable by Section 2." *Id.*

"Two questions are pertinent when [considering] ... a motion to compel arbitration: (1) whether the parties entered a valid arbitration agreement, and, (2) if so, whether the parties' particular 'dispute falls within the scope of the arbitration agreement.'" *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018) (quoting *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)). Arbitration is a matter of contract, and "where a valid arbitration agreement exists, [courts] must liberally construe it, resolving any doubts in favor of arbitration...." *Id.* (internal quotations omitted).

Defendant has produced the employment arbitration to which Plaintiff accepted through not opting out. Plaintiff does not challenge the validity of the agreement. The scope of that agreement includes claims by Plaintiff against Defendant unlawful discrimination or harassment including such claims based on

- 6 -

sex. Therefore, according to the undisputed record, Plaintiff's discrimination claim

is within the scope of a valid arbitration agreement. *See McNamara v. Yellow*

*Transp., Inc.*, 570 F.3d 950, 957 (8th Cir. 2009) ("[W]e have recognized the

permissibility of subjecting employment-related civil rights claims to arbitration.")

(citing *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 837-38 (8th Cir. 1997))

(holding Title VII claims could be subject to arbitration).

As such, Defendant asks the Court to dismiss this action, or stay the case.

"The [Federal Arbitration Act] generally requires a federal district court to stay an

action pending an arbitration, rather than to dismiss it." *Green v. Super Shuttle*

*Intern., Inc.*, 653 F.3d 766, 779 (8th Cir. 2011) (citing 9 U.S.C. § 3) (stating the

district court "shall ... stay the trial of the action until such arbitration has been had

in accordance with the terms of the agreement"). In *Green*, however, the Court

recognized that district courts sometimes rely upon "a judicially-created exception

to the general rule which indicates district courts may, in their discretion, dismiss

an action rather than stay it where it is clear the entire controversy between the

parties will be resolved by arbitration." *Id.* at 669-70; *see also Seldin v. Seldin*, 879

F.3d 269, 272 (8th Cir. 2018) ("The appropriate procedure would have been for the

district court to stay or dismiss the case ... pending arbitration."); *McLeod v. Gen.*

*Mills, Inc.*, 856 F.3d 1160, 1168 (8th Cir. 2017) ("The district court may decide

whether to stay this action or dismiss it pending resolution of the arbitrations.")
(citing *Unison Co.*, 789 F.3d at 821).

Because it is clear the entire controversy between the parties is subject to, and must be resolved by, arbitration, the Court will dismiss this action, without prejudice.

**Conclusion**

For the reasons stated herein, the Court concludes the parties have entered into a valid agreement to arbitrate the claims set out in Plaintiff's Complaint. The Motion to Compel Arbitration will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss and Compel Arbitration or the Alternative Motion to Stay Proceedings Pending Arbitration, [Doc No. 7], is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is dismissed without prejudice.

Dated this 17th  day of May, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

- 8 -

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DARYL L. MOORMAN and STEVEN M.
DYMOND, on their own behalf and on
behalf of all others similarly situated,

                    Plaintiffs,                         OPINION AND ORDER

          v.                                            18-cv-820-wmc

CHARTER COMMUNICATIONS, INC.,
CHARTER COMMUNICATIONS, LLC,
SPECTRUM MANAGEMENT HOLDING
COMPANY, LLC, and TWC
ADMINISTRATION, LLC,

                    Defendants.

Plaintiffs Daryl L. Moorman and Steven Dymond assert claims on behalf of themselves and other similarly situated employees against their employer Charter Communications and related entities, asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Wisconsin wage payment and overtime laws, Wis. Stat. §§ 103, 104, 109.01. Before the court is defendants' motion to compel arbitration. (Dkt. #27.)[1] Because plaintiffs entered into an enforceable agreement, requiring the arbitration of all disputes arising out of their employment, including the wage and hour-based claims asserted here, and requiring arbitration to proceed on an individual basis, the court will now grant defendants' motion. However, the court will stay this case pending arbitration, rather than dismiss it, finding that plaintiffs have raised a question about the scope of the arbitrable issues, and whether it would cover claims pre-dating the effective

---

[1] Also before the court is plaintiffs' motion to file a sur-reply addressing defendants' argument that an arbitrator should decide the gateway question of arbitrability. (Dkt. #44.) That motion is granted, and the court has reviewed plaintiffs' sur-reply. (Dkt. #44-1.)

date of the arbitration agreement, an issue that the arbitrator will be allowed to reach in the first instance.[2]

## ALLEGATIONS OF FACT[3]

### A. Allegations in Amended Complaint

Plaintiffs Moorman and Dymond are both technicians employed by Charter Communications, Inc., Charter Communications, LLC, Spectrum Management Holding Company, LLC, and/or TWC Administration, LLC (collectively referred to as "Charter" or "defendants"). Moorman's employment with Charter commenced in October 2005; Dymond's employment commenced in April 2014.

Plaintiffs allege that they were not compensated for at least 15 minutes at the start of each workday spent on the following activities: (1) checking their phones or similar devices for mapping routes to their first assignment of the day; (2) removing or returning equipment to their company vehicle; and (3) and inspecting their vehicle. Plaintiffs also allege that Charter paid them non-discretionary, quarterly bonuses that were not include in their total compensation, resulting in an understatement of their actual, regular rate of

---

[2] Whether the arbitrator's ruling on scope should prove definitive is an issue not yet ripe for this court to consider.

[3] A motion to compel arbitration is reviewed in a manner similar to one for summary judgment: the court considers all evidence in the record and draws all reasonable inferences in the light most favorable to the non-moving party. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Scheurer v. Fromm Family Foods LLC*, No. 15-CV-770-JDP, 2016 WL 4398548, at *1 (W.D. Wis. Aug. 18, 2016). In addition to considering plaintiffs' allegations, the court has also considered the arbitration agreement and related documents, including defendants' supplemental filing submitted at the request of the court.

pay for purposes of calculating overtime.   Plaintiffs assert these allegations on the part of themselves, as well as a putative FLSA collective and Rule 23 classes of technicians who similarly performed work off the clock and were paid overtime without factoring the impact of non-discretionary bonuses into their regular rate of pay.

## B.  Solution Channel Agreement Announcement and Explanation of Arbitration Opt-out Provision for Employees

In an email dated October 6, 2017, Charter announced the launch of Solution Channel to its employees.   The announcement was sent by Paul Marchand, Charter's Executive Vice President of Human Resources, to employees' company email accounts. Defendants represent that all employees, including plaintiffs, received the announcement, and include as exhibits emails sent to "Moorman, Daryl L" and "Dymond, Steven M." (Knapper Aff., Ex. A (dkt. #31-1); Knapper Aff., Ex. A (dkt. #32-1).)

In part, the announcement explained that "Charter has launched *Solution Channel*, a program that allows the company to efficiently resolve covered employment-related legal disputes through binding arbitration."   (Knapper Aff., Ex. A (dkt. #31-1) 3.) The announcement further explained that:

> By participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) involving a covered claim and/or the right to a jury trial involving any such claim.   More detailed information about *Solution Channel* is located on Panorama.   Unless you opt out of participating in *Solution Channel* within the next 30 days, you will be enrolled.   Instructions for opting out of *Solution Channel* are also located on Panorama.

(*Id.* (underlining added for emphasis).)  The announcement included a link to the Solution

3

Channel webpage on Panorama, which is Charter's intranet site accessible to all employees.

That webpage included an "Opting out of Solution Channel" section, which also explained that:

> *If you do not opt out* of Solution Channel within the designated time, *you will be automatically enrolled* in Solution Channel *and considered to have consented to the terms of the Mutual Arbitration Agreement* at that time. To opt-out of Solution Channel, please **click here**.  In the new window that will open, click Main Menu->Self-Service->Solution Channel.

(Vasey Decl. (dkt. #47) ¶ 12 (italics added for emphasis); *id.*, Ex. C (dkt. #47-3).)

After following the links described above, an employee who wanted to opt out, would reach a screen containing the following language:

> After having carefully considered its components, I am opting out of Solution Channel.  By opting out, I understand and agree that I am not required to participate in Solution Channel. I also understand that if I am subject to another arbitration agreement, I will remain subject to that agreement.  I am only opting out of Solution Channel by completing this form.

(*Id.* ¶ 13; *id.*, Ex. D (dkt. #47-4).)  The employee could then check a box indicating "I want to opt out of Solution Channel," electronically sign his or her name, and save the form. (*Id.*)

In response to the court's inquiry about the employees' access to this opt-out process, defendants represented that 9,091 employees who received the October 6, 2017, email, opted out of the Solution Channel agreement, totally approximately 10% of

4

Charter's employee population.  (*Id.* ¶ 19.)[4]

### C. Solution Channel Agreement Provisions

The Solution Channel Arbitration Agreement (the "Agreement" or the "Arbitrating

Agreement") itself provides in pertinent part that:

> You and Charter mutually agree that, as a condition of Charter
> considering your application for employment and/or
> employment with charter, any dispute arising out of or relating
> to your pre-employment application and/or employment with
> Charter or the termination of that relationship, except as
> specifically excluded below, must be resolved through
> arbitration by a private and neutral arbitrator, to be jointly
> chosen by you and Charter.

(Knapper Decl., Ex. C (dkt. #31-3) 2.)  Material to this case, the covered claims include

"wage and hour-based claims including claims for unpaid wages." (*Id.*)  The agreement also

list fourteen excluded claims, none of which touch on the claims at issue here. (*Id.* at 3.)

The Arbitration Agreement further provides that

> You and Charter agree that both parties may only bring claims
> against the other party in their *individual* capacity and not as a
> plaintiff or class member in any purported class or
> representative proceeding, whether those claims are covered
> claims under Section B, or excluded claims under Section C.

(*Id.*)  Under the terms of the Agreement, the employee and Charter also acknowledged

"waiving their right to demand a jury trial." (*Id.* at 5.)  Finally, the Agreement states that

it "will be governed by the Federal Arbitration Act." (*Id.* at 6.)

---

[4] In response to this representation, plaintiffs moved to lift the stay to allow for discovery of opt-out employees (dkt. #48), but because the court concludes that the named plaintiffs are subject to the arbitration agreement, plaintiffs fail to justify their use of the discovery procedures of this federal court to search for someone with actual standing to proceed.

Although plaintiffs did not opt-out of the Arbitration Agreement, defendants represent that both declined to stipulate to arbitration before they filed this motion.

## OPINION

### I. Arbitration Overview

There appears to be no dispute that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs defendants' motion. (*See* Knapper Decl., Ex. C (dkt. #31-3) 6 ("This Agreement will be governed by the Federal Arbitration Act.").) *See also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113-14 (2001) (explaining that the FAA covers "all contracts with the Congress' commerce power"); Am. Compl. (dkt. #23) (non-Wisconsin company employing Wisconsin residents, among residents of other states).

Under the Act, a court must compel arbitration where:  (1) a valid agreement to arbitrate exists; (2) the dispute falls within the scope of that agreement; and (3) plaintiff has refused to proceed to arbitration in accordance with the arbitration agreement. *See Zurich Am. Ins. Co. v. Watts Indus.*, 466 F.3d 577, 580 (7th Cir. 2006); *Ineman v. Kohl's Corp.*, No. 14-cv-398-wmc, 2015 WL 1399052, at *3 (W.D. Wis. Mar. 26, 2015). Moreover, there is a "presumption of arbitrability" in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," with "[d]oubts . . . resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citing *United Steelworkers of Am. V. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Most recently in *Epic Systems Corporation*

6

*v. Lewis*, 138 S. Ct. 1612 (2018), the Supreme Court reiterated that the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Id.* at 1621 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

If enforceable, there is no meaningful dispute that plaintiffs' wage and hour-based claims are covered by the Solution Channel Agreement, nor that plaintiffs have refused to proceed to arbitration. Instead, plaintiffs maintain that the court should refuse to compel arbitration because the Agreement is unconscionable and, therefore, unenforceable. *See Lewis*, 138 S. Ct. at 1622 (providing opening to challenge validity of arbitration agreement if the agreement was "extracted, say, by an act of fraud or duress or in some other unconscionable way that would render any contract unenforceable").

## II. Unconscionability Challenge

Under Wisconsin law, unconscionability means "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Lewis v. Epic Sys. Corp.*, No. 15-CV-82-BBC, 2019 WL 330168, at *2 (W.D. Wis. Jan. 25, 2019) (quoting *Discount Fabric House of Racine, Inc. v. Wis. Telephone Co.*, 117 Wis. 2d 587, 601, 345 N.W.2d 417 (1984)). As this court recently explained in another employment-related case seeking to compel arbitration, under Wisconsin law, "the common law doctrine of unconscionability exists to prevent 'oppression or unfair surprise,'" not to "'disturb[ an] allocation of risks because of superior bargaining power.'" *Schultz v. Epic Sys. Corp.*, No. 16-CV-797-WMC, 2019 WL 1332580, at *4 (W.D. Wis. Mar. 25, 2019) (quoting *Wis. Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 32, 290 Wis.2d 514, 714 N.W.2d 155 (2006); Richard A. Lord, Williston on Contracts

7

§ 18.8, at 49-50 (4th ed. 1998)). The court must consider both procedural and substantive unconscionability. "Procedural unconscionability examines the contract's formation to determine whether there was a real and voluntary meeting of the minds." *Schultz*, 2019 WL1332580, at *4 (quotation marks omitted) (citing *Jones*, 2006 WI 53, ¶ 34). "Substantive unconscionability refers to the reasonableness of the contract terms to which the contracting parties agreed, considered in the light of the commercial background and commercial needs." *Id.* at *7 (quoting *Villalobos v. EZCorp, Inc.*, No. 12-CV-852-SLC, 2013 WL 3732875, at *2 (W.D. Wis. July 15, 2013)); *see also Jones*, 2006 WI 53, ¶¶ 35, 36. "A contract is substantively unconscionable if its terms 'are unreasonably favorable to the more powerful party.'" *Id.* (quoting *Jones*, 2006 WI 523, ¶ 36).

The court must also consider unconscionability challenges on a "case-by case-basis," mindful of the Wisconsin Supreme Court's direction that "[t]he more substantive unconscionability present, the less procedural unconscionability is required, and vice versa." *Jones*, 2006 WI 53, ¶ 33. Nonetheless, "a certain quantum" of each is required to demonstrate unconscionability. *Id.*

Here, plaintiffs offer four bases for finding the Agreement unconscionable. *First*, plaintiffs argue that the Agreement is procedurally unconscionable because plaintiffs' waiver of their rights to proceed in court on a class basis and to a jury trial was "not voluntary and knowing." (Pls.' Opp'n (dkt. #38) 6.) For support, both Moorman and Dymond submit declarations in which they each aver that they do "not recall ever receiving notice of the Solution Channel program," and were "not aware of the Solution Channel program until it was brought to [their] attention in this case." (Moorman Decl. (dkt. #39)

8

¶¶ 5, 7; Dymond Decl. (dkt. #42) ¶¶ 5, 7.)  While they may not *recall* receiving the email, they do not dispute receiving it, something otherwise established in the record by the email sent to plaintiffs' company email addresses.  (Knapper Aff., Ex. A (dkt. #31-1); Knapper Aff., Ex. A (dkt. #32-1).)  Moreover, as defendants point out, the "mailbox rule" -- which establishes a rebuttable presumption that the document in question was "sent, received and read" -- has been extended to emails. *Ball v. Kotter*, 723 F.3d 813, 830 (7th Cir. 2013).

As the Seventh Circuit explained in *Tinder v. Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002), an employee cannot rebut the presumption of receipt or avoid arbitration simply by averring that she does not recall seeing or reviewing the arbitration program materials. *Id.* at 735–36 ("Tinder's only evidence that she never received notice of the program was her own affidavit in which she avers that she 'does not recall seeing or reviewing the Arbitration Program brochure that Defendant alleges was included with her payroll check in October, 1997,' and this does not raise a genuine issue of material fact.") Indeed, as defendants point out, courts routinely enforce arbitration agreements sent by email to employees with an opt-out procedure, similar to that at issue here.  (*See* Defs.' Reply (dkt. #43) 5 (citing *Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 213–14 (1st Cir. 2019) ("So absent her dissent, the natural interpretation of her conduct is that she accepted. And that must stand. Thus, we agree with the district court that Rivera impliedly accepted this arbitration agreement and is bound by it."); *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *6 (N.D. Ill. June 12, 2018) (upholding arbitration agreement with opt-out provision)).)

While plaintiffs are correct that defendants *could* have structured the arbitration

9

program as an opt-in procedure, defendants were not obligated to do so under current law. To the contrary, mandatory arbitration agreements -- providing no opt-out mechanism -- have been repeatedly upheld as well. *See Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) ("It does not follow that this court would invalidate an arbitration agreement such as this one, when we have previously held that a nonoptional, mandatory arbitration agreement is valid."); *Schultz*, 2019 WL 1332580, at *4 (rejecting unconscionability challenges to mandatory arbitration agreement); *Lewis*, 2019 WL 330168, at *3 (same).[5]

*Second*, plaintiffs argue that the Agreement is substantively unconscionable because the "remedies available under the Arbitration Agreement are potentially less than those available in a court proceeding." (Pls.' Opp'n (dkt. #38) 6.) Plaintiffs further argue that the Agreement "grants to the Arbitrator the discretion to award remedies available under a particular federal or state law," and that "[s]tatutorily available remedies should not be limited by an arbitrator in the exercise of his or discretion." (*Id.* at 9.) Whether an arbitrator, a judge or a jury, *someone* has to exercise discretion in awarding remedies; in other words, there is no automatic remedy available in court that is not available in an arbitration provision. Moreover, plaintiffs fail to explain, or again offer any support, for their argument that an arbitrator necessarily would limit damages or have less remedy

---

[5] Plaintiffs attempt to distinguish Epic's arbitration agreement on the basis that it covered "a narrow category of claims" (Pls.' Opp'n (dkt. #38) 7), but fail to direct the court to any case law or legal development that would support distinguishing the Agreement here for purposes of finding it unconscionable, especially in light of the fact that Charter employees could *opt-out* of the agreement. In stark contrast, the only choice for Epic employees who did not want their claims controlled by the arbitration agreement was to quit. *See Lewis*, 2019 WL 330168, at *3.

10

options available to her.   Plaintiffs appear to simply be contesting arbitration as a reasonable resolution mechanism generally, but that argument has been soundly rejected in recent cases, including another decision last week by the Supreme Court.  *See Lamp Plus, Inc. v. Varela*, No. 17-988, slip op. at *8 (U.S. Apr. 24, 2019) (holding that a court may not compel classwide arbitration when an agreement is silent on the availability of such agreement).

*Third*, plaintiffs argue that the contract is "ambiguous by its terms," representing that "[i]n one section of the program, it states that participation in a program, for existing employees, is compulsory and a condition of employment, while another section it permits any existing employee to opt-out of the program for no reason."  (Pls.' Opp'n) 2.)

The second section refers to the opt-out provision previously discussed, while the first section refers to language in the Program Guidelines for the Solution Channel program, attached as an exhibit to plaintiffs' counsel's affidavit, the relevant portion of which provides:  "Within limited exceptions, participation in the Solution Channel is a condition of consideration for employment with Charter and a condition of working at Charter."  (*Id.* at 5 (quoting Straka Decl., Ex. 2 (dkt. #40-1) 8).)  There is *no* conflict in these two provisions since the 30-day opt-out procedure is itself a "limited exception."  In other words, employees who opt-out of the Agreement may maintain their employment with Charter.   Regardless, in the court's review of the Agreement and the materials explaining the Agreement, the mere possibility of "limited exceptions" in no way renders ambiguous or inaccessible the straightforward language explaining that the Solution Channel, including resolution of disputes by arbitration, is a condition of employment with

11

Charter.

*Fourth*, and finally, plaintiffs argue that the Agreement is "improperly one-sided in that it punishes employees but not the employer by requiring payment of attorney's fees only to the employer if a motion to compel arbitration is granted but not to the employees if such motion is denied." (*Id.* at 6 (citing *Jones*, 2006 WI 53, ¶ 7 (finding arbitration agreement unconscionable in part because the agreement allowed Wisconsin Auto Title Loans full access to the courts, but limited the borrower to arbitration).) This argument also rests on a flawed reading of the Agreement.

The Agreement does not distinguish between employees and Charter; instead, the referenced section of the Agreement provides:

> If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting arbitration submits to arbitration following the commencement of the action or proceeding, the party that resisted arbitration will be required to pay to the other party all costs, fees and expenses that they incur in compelling arbitration, including, without limitation, reasonable attorneys' fees.

(Knapper Decl., Ex. C (dkt. #31-3) 4.) In other words, if Charter were to bring a court action against an employee subject to the Arbitration Agreement for "collection of overpaid wages," "damage to or loss of Charter property," or "recovery of unauthorized charges on company credit card" -- all "covered claims" under the terms of the Agreement -- the *employee* could compel arbitration and seek his or her attorneys' fees and costs in doing so. This provision, therefore, is mutual and not improperly one-sided.

Having rejected each of these arguments, the court concludes that plaintiffs have failed to meet their burden of establishing unconscionability. *See Villalobos*, 2013 WL

12

3732875, at *2 (noting that it is plaintiff's burden to establish unconscionability). Accordingly, the court will grant defendants' motion to compel arbitration.

### III.  Scope of Arbitration

There is one remaining issue, however.  In their opposition brief, plaintiffs request that, if the motion to compel is granted, the court allow plaintiffs to amend their complaint to assert claims for the period of October 4, 2015, three years before the filing date, through November 4, 2017, the day before the Arbitration Agreement went into effect. Plaintiffs argue that the Arbitration Agreement does not apply retroactively, and, therefore, their wage and hour-based class claims preceding the Agreement should be able to continue in this court.

Reasonable though that argument would appear on its face, the Arbitration Agreement, which provides that "all disputes related to the arbitrability of any claim or controversy" are themselves arbitrable, dictates a different result.  (Knapper Decl., Ex. C (dkt. #31-3).)  While plaintiffs are correct, as they point out in their sur-reply, that there is a presumption that a court decides disputes about arbitrability, *see Wis. Local Gov't Property Ins. Fund v. Lexington Ins. Co.*, 840 F.3d 411, 414-15 (7th Cir. 2016), the case law is also explicit that parties can agree to arbitrate "gateway" questions of arbitrability.  *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (holding that parties can agree to arbitrate "gateway" questions of arbitrability); *see also Grasty v. Colo. Tech. Univ.*, 599 Fed. Appx. 596, 598 (7th Cir. 2015) ("[W]e must enforce the parties' agreement to arbitrate 'gateway' questions about arbitrability of claims and the scope of the arbitration agreement." (citation omitted)).

13

Here, the language in the Agreement requiring that an arbitrator is to consider "all disputes related to the arbitrability of any claim or controversy" is "clea[r] and unmistakeabl[e] evidence" that the parties intended for gateway questions to be arbitrable. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quoting *AT & T Techs.*, 475 U.S. at 649). As such, the question of whether the Arbitration Agreement covers any claims pre-dating its effective date is for the arbitrator to consider in the first instance. Because of this question and concerns about possible statute of limitations implications, however, the court will stay this case rather than dismiss it subject to reopening. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (counseling generally for district courts to "stay the proceedings rather than to dismiss outright"); *Employers Ins. of Wausau v. Cont'l Cas. Co.*, No. 15-CV-226-WMC, 2016 WL 632642, at *3 (W.D. Wis. Feb. 17, 2016) (recognizing exception, and dismissing cases, where "there is nothing for the court to decide unless and until a party seeks confirmation of or challenges the arbitrators award") (internal citation and quotation marks omitted)). During the stay, plaintiffs are directed to provide the court with a status update every six months.

14

ORDER

IT IS ORDERED that:

1) Defendants Charter Communications, Inc., Charter Communications, LLC, Spectrum Management Holding Company, LLC, and/or TWC Administration, LLC's motion to compel arbitration (dkt. #27) is GRANTED.

2) Plaintiffs Daryl L. Moorman and Steven Dymond's motion for leave to file a sur-reply brief (dkt. #44) is GRANTED.

3) Plaintiffs' motion to lift stay of discovery (dkt. #48) is DENIED.

4) The clerk's office is directed to stay this case pending arbitration.

Entered this 1st day of May, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

15

1
2
3
4
5
6
7
8
9

NOTE: CHANGES MADE BY THE COURT

10
11
12

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

13  MARTIN CASTORENA and
    EMMANUEL SANCHEZ,
14  individually and on behalf of all
15  other persons similarly situated,

16                    Plaintiff,

17       v.

18  CHARTER COMMUNICATIONS,
19  LLC, a Delaware limited liability
    company doing business in
20  California; and DOES 1 through 100,
21  inclusive,

22                    Defendant.

23
24
25
26
27
28[

Case No.  2:18-cv-07981-JFW-KS

Hon. John F. Walter

**STATEMENT OF DECISION
GRANTING DEFENDANT'S MOTION
TO COMPEL ARBITRATION**

## I.   INTRODUCTION

On November 26, 2018, Defendant Charter Communications, LLC ("Defendant") filed a Motion to Compel Plaintiff Martin Castorena's and Plaintiff Emmanuel Sanchez's (collectively, "Plaintiffs") individual claims to private arbitration and dismiss Plaintiffs' class claims ("Motion").  Defendant's Motion is based on Plaintiff's agreement to arbitrate all disputes arising out of their employment with Defendant.  Motion, pp. 3-5.  Plaintiffs filed an Opposition on November 27, 2018.  On November 29, 2018, Defendant filed a Reply.[1]  The Court hereby **GRANTS** Defendant's Motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a national telecommunications company that provides telephone, internet, and cable services.  Plaintiffs were employed by Defendant as Fulfillment Support Technicians ("FSTs") at its Long Beach facility.  Plaintiff Castorena was employed by Defendant from May 15, 2017 through June 4, 2018, and Plaintiff Sanchez was employed by Defendant from March 2016 until July 5, 2018.   Plaintiffs assert the following claims against Defendant on behalf of themselves and others similarly situated: (1) Failure to Pay Regular and Overtime Wages (Labor Code §§ 510, 1194, 1198); (2) Failure to Pay Minimum Wage (Labor Code §§ 1194, 1194.2, 1197); (3) Failure to Pay Wages (Labor Code § 204); (4) Waiting Time Penalties (Labor Code §§ 201-203); (5) Failure to Provide Accurate Itemized Wage Statements (Labor Code § 226); (6) Fraudulent Inducement; (7) Fraud by False Promise; (8) Promissory Estoppel; (9) Unfair Business Practices (Business & Professions Code §§ 17200 *et seq.*)  Complaint, Docket No. 10-3.

---

[1] Defendant's Request for Judicial Notice in Support of Motion to Compel Arbitration, filed December 11, 2018 (Docket No. 39), is improper and untimely and, thus, it is **DENIED**.

## A.     Plaintiffs Received The Arbitration Agreement.

Defendant launched its dispute resolution program, Solution Channel, on October 6, 2017.  November 26, 2018 Declarations of Tammie Knapper ("Knapper Decls. I and II"), ¶ 5.  Defendant announced the launch of Solution Channel to its employees via an email sent by the company's Vice President of Human Resources on October 6, 2017 (the "Solution Channel Announcement").  *Id.*, ¶ 6 and Exh. A. Employees, including Plaintiffs, received the Solution Channel Announcement at their company email addresses.  *Id.*  The Solution Channel Announcement clearly explained that "by participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) . . . Unless you opt out of participating in *Solution Channel* within the next 30 days, you will be enrolled.  *Id.*, ¶ 8 and Exh. A.  Instructions for opting out of *Solution Channel* are also located on Panorama."  *Id.*, ¶ 11 and Exh. A.

Plaintiffs deny that they received or read the Solution Channel Announcement email, and therefore, claim that they could not have accepted the agreement to arbitrate.  Opposition, pp. 6-7.  Plaintiffs assert that they did not have remote access to their company email addresses and did not have regular access to their company email accounts.  *Id.*  They also assert that they were never instructed to regularly check their company email.  *Id.*  Defendant's witnesses proffered credible evidence to the contrary.  Defendant demonstrated that Plaintiffs did have remote access to their company email accounts, and did use their company email accounts.  November 29, 2018 Declaration of Dan Vasey ("Vasey Decl."), ¶¶ 3-5 and Exh. A-B.  Defendant's evidence also demonstrates that Plaintiffs sent hundreds of emails during their employment, including in the immediate hours and days following the Solution Channel Announcement.  *Id.*  Defendant's Employee Handbook and Code of Conduct also contained provisions informing Plaintiffs that they were expected to regularly monitor their company email accounts.  *Id.*, Exh. C-D.

2

**B.  Plaintiffs Did Not Opt Out of The Arbitration Agreement And Continued Their Employment With Defendant.**

Plaintiffs were provided 30 days to opt out of the Solution Channel Agreement and were provided with clear and precise information and instructions regarding how to do so.  Knapper Decls. I and II, ¶¶ 8 and 11-15.  Specifically, a link to the Solution Channel web page was included in the Solution Channel Announcement, and employees had access to that web page through Charter's intranet site.  *Id.*  Employees who wanted to opt out of the program could do so at an internal web page by checking a box next to the phrase, "I want to opt out of Solution Channel," entering their name in an adjacent text field, and clicking "SAVE."  *Id.*  It is undisputed that Plaintiffs did not opt out of the Solution Channel Agreement and that Plaintiffs continued their employment with Defendant for several months after the expiration of the opt out period.  *Id.*, ¶¶ 19-21.

**C.  The Arbitration Agreement And Its Terms.**

The plain language of the Arbitration Agreement requires Plaintiffs to individually arbitrate all disputes arising out of their employment with Charter.  *See* Knapper Decls. I and II, Ex. C, p. 1.  The Arbitration Agreement provides, in relevant part:

> You and Charter mutually agree that, as a condition of Charter considering your application for employment and/or your employment with Charter, any dispute arising out of or relating to your pre-employment application and/or employment with Charter or the termination of that relationship...must be resolved through binding arbitration by a private and neutral arbitrator[.]

> ****

> You and Charter mutually agree that the following disputes, claims, and controversies (collectively referred to as "covered claims") will be submitted to arbitration in accordance with this Agreement: all disputes, claims, and

3

1
2
3
4
5

> controversies that could be asserted in court or before an
> administrative agency…including without limitation…wage
> and hour-based claims including claims for unpaid wages,
> commissions, or other compensation or penalties (including
> meal and rest break claims, claims for inaccurate wage
> statements, claims for reimbursement of expenses)[.]

6   *Id.* at pp. 1-2.  The Arbitration Agreement also provides that any challenges to the
7   validity, enforceability or breach of the Arbitration Agreement must be resolved in
8   arbitration.  *Id.* at pp. 1.  The Arbitration Agreement contains a class action waiver,
9   which provides that Plaintiffs must pursue any claims in arbitration solely on an
10  individual basis, and not on a class basis.  *Id.* at pp. 1-2.  The Arbitration Agreement
11  states that it shall be "governed by the Federal Arbitration Act."  *Id.* at pp. 5.

12      **D.**    **Plaintiff Castorena Entered Into A Predecessor Agreement.**

13      Prior to entering into the Solution Channel Arbitration Agreement, Plaintiff
14  Castorena entered into a prior agreement to arbitrate when he applied for and accepted
15  the online offer for his employment with the company in April of 2017.  November
16  26, 2018 Declaration of Chance Cassidy ("Cassidy Decl."), ¶¶ 16-17.  Plaintiff
17  Castorena electronically accepted and acknowledged the predecessor agreement (the
18  "JAMS Agreement"), which also covers all employment-related disputes and contains
19  a class action waiver.  *Id.*, Exh. B, pp 1-2.  Because the Court concludes that the
20  Solution Channel Arbitration Agreement is valid and enforceable, the Court need not
21  discuss the enforceability of the JAMS Agreement.  However, if the Solution Channel
22  Arbitration Agreement was determined to be invalid, the Court concludes that the
23  JAMS Agreement would still bar Plaintiff Castorena's individual and class claims.

24  **III.**    **LEGAL STANDARD**

25      The Federal Arbitration Act (the "FAA") "provides that written agreements to
26  arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable,
27  and enforceable, save upon such grounds as exist at law or in equity for the revocation
28  of any contract.'"  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)

---

4

1   (quoting 9 U.S.C. § 2). The FAA establishes "a liberal federal policy favoring

2   arbitration agreements.'" *Epic Sys. Corp., v. Lewis*, 138 S. Ct. 1612, 1621 (2018)

3   (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24

4   (1983)). Thus, under the FAA, the Court's role is limited to determining: (1) whether

5   the arbitration agreement is valid and enforceable; and (2) whether the claims asserted

6   are within the purview of the arbitration agreement.[2]  *See  Chiron Corp. v. Ortho*

7   *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

8        "The party opposing arbitration bears the burden of showing that the agreement

9   is not enforceable." *Oakley v. GMRI, Inc.*, No. CV-13-042-RHW, 2013 WL 5433350,

10   at *2 (E.D. Wash. Sept. 27, 2013); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S.

11   79, 91 (2000). The "party resisting arbitration [also] bears the burden of proving that

12   the claims at issue are unsuitable for arbitration[,]" *Green Tree Fin. Corp.-Ala.*, 531

13   U.S. at 91 (2000), with "any doubts . . . resolved in favor of arbitration." *Moses H.*

14   *Cone Mem'l Hosp.*, 460 U.S. at 24-25. If the party resisting arbitration cannot meet

15   its burden, the Court must order the parties to arbitrate disputes covered by a valid

16   agreement to arbitrate. *Dean Witter Reynolds, Inc.*, 470 U.S. at 218.

17   **IV.   DISCUSSION**

18        **A.   Defendant Did Not Waive Its Right To Arbitrate.**

19        "A determination of whether 'the right to compel arbitration has been waived

20   must be conducted in light of the strong federal policy favoring enforcement of

21   arbitration agreements.' Because waiver of the right to arbitration is disfavored, 'any

22   party arguing waiver of arbitration bears a heavy burden of proof.'" *Martin v.*

23   *Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016) (internal citations omitted). In the Ninth

24

25   _____

26   [2] The FAA applies here given that Defendant is engaged in interstate commerce as an
     out-of-state company employing California residents and the Arbitration Agreement

27   itself provides that it will be "governed by the Federal Arbitration Act." *See*
     Defendant's Notice of Removal (Dkt. No. 1, pp. 7); Plaintiffs' Complaint (Dkt. No.

28   10-3). *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001).

1   Circuit, a party can waive its right to compel arbitration only after an extended period

2   of silence and delay and engaging in other conduct inconsistent with an intent to

3   arbitrate. *Martin*, 829 F.3d at 1125. Plaintiffs must also show prejudice to prove

4   waiver. *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir.

5   1978); *see also Martin*, 829 F.3d at 1126.

6       Plaintiffs devote the majority of their Opposition to their contention that

7   Defendant waived its right to compel arbitration due to delay.    Specifically, Plaintiffs

8   argue that Defendant delayed by removing this action to federal court; meeting and

9   conferring regarding case management, scheduling, and discovery issues; making

10  multiple filings in federal court; and waiting over three months after the removal to

11  bring a motion to compel arbitration. Opposition, pp. 9-11. The Court concludes that

12  Defendant did not act inconsistently with its right to compel arbitration and that

13  Defendant was justified in refusing to participate in any activity that might be

14  considered inconsistent with that right. Defendant's removal of the case to federal

15  court is insufficient to constitute a waiver. *Cox v. Ocean View Hotel Corp.*, 533 F.3d

16  1114, 1126 (9th Cir. 2008) (no waiver where defendant moved to compel after

17  removing case to federal court); *Morvant v. PF. Chang's China Bistro, Inc.*, 870 F.

18  Supp. 2d 831, 846 (N.D. Cal. 2012) (noting "removal prior to compelling arbitration

19  is neither uncommon nor inconsistent with the right to arbitrate").   In addition,

20  Defendant's "delay" in bringing its Motion was due in large part to the parties'

21  informal attempts to resolve the arbitration issue by stipulation, including Plaintiffs'

22  review of two arbitration agreements and supporting documents. November 29, 2018

23  Declaration of Max C. Fischer ("Fischer Decl."), Exh. A-B.

24      Plaintiffs have also failed to demonstrate they have suffered any prejudice.

25  Plaintiffs' argument that the costs they expended in meeting and conferring and filing

26  joint stipulations constitute prejudice borders on the frivolous. Costs and expenses

27  incurred in early litigation before a motion to compel "do not support a finding of

28  waiver or prejudice." *Cox*, 533 F.3d at 1126. If anything, these costs are "self-

6

inflicted wounds" and cannot support their claim of wavier. *Martin*, 829 F.3d at 1126

("To prove prejudice, plaintiffs must show more than 'self-inflicted' wounds that they

incurred as a direct result of suing in . . . court contrary to the provisions of an

arbitration agreement.") Thus, Plaintiffs have failed to meet their burden of proving

waiver in this case.

**B.    The Arbitration Agreement Is Valid And Enforceable.**

"[A]rbitration is a matter of contract," *United Steelworkers of Am. v. Warrior &*

*Gulf Nav. Co.*, 363 U.S. 574, 582 (1960), and thus, the existence of a valid arbitration

agreement is determined under generally applicable state law on contract formation.

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also*

*Armendariz v. Foundation Health Psycare Services, Inc.*, 24 Cal. 4th 83, 98 (2000)

("under both federal and California law, arbitration agreements are valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract."). California's public policy is equally as strongly in favor of

arbitration agreements as the federal policy. *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th

1064, 1079 (2003); *Madden*, 17 Cal. 3d at 706-07 (1976) ("[A]rbitration has become

an accepted and favored method of resolving disputes . . . praised by the courts as an

expeditious and economical method of relieving overburdened civil calendars.")

The acceptance of an arbitration agreement may be express or implied.

*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 55 Cal.

4th 223, 236 (2012). For example, an employee's decision to continue his or her

employment when an arbitration agreement is a condition of that employment

constitutes acceptance of the arbitration agreement. *See e.g. Craig*, 84 Cal. App. 4th

at 420 (finding an enforceable agreement to arbitrate where the employer mailed

information regarding the ADR program to the employee's home, and the employee

continued to work for the employer, which constituted acceptance); *Romero v. GE*

*Betz, Inc.*, No. CV 16-1356 FMO (JCX), 2016 WL 9138054, at *4 (C.D. Cal. June 28,

2016) (granting motion to compel arbitration where plaintiff received a copy of the

7

1  arbitration procedure as part of a training course and continued his employment with
2  defendant and thereby impliedly accepted the arbitration agreement).

3      In this case, Plaintiffs consented to individually arbitrate all employment-
4  related disputes with Defendant when they failed to opt out and continued their
5  employment with Defendant. Employees were clearly instructed that if they did not
6  "opt out of participating in Solution Channel within the next 30 days," they would be
7  enrolled in the program and would "waive the right to initiate or participate in court
8  litigation...involving a covered claim." Knapper Decl. I and II, ¶ 7, Exh. A, p. 2.
9  Apart from the announcement, the ability to opt out and the consequences of electing
10 not to do so was communicated to Plaintiffs in several other ways, including in the
11 Arbitration Agreement itself and the program's web page on the Company-wide
12 intranet. *Id.*, Exh. A-D. Contrary to Plaintiffs' assertion, they were given more than a
13 "meaningful opportunity" to opt out of the Arbitration Agreement, and simply chose
14 not to do so.

15      The Court finds Plaintiffs' argument that they allegedly did not read or
16 otherwise were not aware of the Solution Channel program and Arbitration
17 Agreement unpersuasive. Opposition, p. 6. Plaintiffs' claims that they did not use
18 their email accounts and had limited access to those accounts, is belied by the
19 overwhelming evidence demonstrating that they sent hundreds of emails on their
20 accounts, including on the days immediately following the Solution Channel
21 announcement using mobile devices with remote access. Vasey Decl., ¶¶ 3-5 and
22 Exh. A-B. The evidence also demonstrates, contrary to their sworn declarations, that
23 each Plaintiff had remote access to their email accounts via a handheld device and sent
24 and received emails using that device. *Id.*

25      Plaintiffs' failure to read their company email does not negate the sufficiency of
26 the notice provided by Defendant announcing the roll-out of the arbitration program.
27 *Aquino v. Toyota Motor Sales U.S., Inc.*, No. 15-cv-05281-JST, at *6 (N.D. Cal. May.
28 31, 2016); *see also Lovig v. Best Buy Stores LP*, No. 18-cv-02807-PJH, at *9 (N.D.

8

1   Cal. Aug. 28, 2018).  Plaintiffs' argument ignores the mailbox rule, which provides

2   that "the proper and timely mailing of a document raises a rebuttable presumption that

3   the document has been received by the addressee in the usual time."  *Schikore v.*

4   *BankAmerica Supplemental Retirement Plan*, 269 F.3d 956, 961 (9th Cir. 2001).  A

5   simple denial of receipt is insufficient to rebut the presumption.  *See, e.g.*, *Craig*, 84

6   Cal. App. 4th at 421 (upholding order compelling arbitration where plaintiff claimed

7   she never received a copy of the arbitration agreement); *Winfrey*, 2016 WL 6666810,

8   at *3 (same); *Hill*, 2014 WL 10100283, at *3 (noting "mere statements of denial are

9   not sufficient").

10              1.   **The Arbitration Agreement Is Not Procedurally**
                     **Unconscionable.**

11

12          Plaintiffs take issue with the standard-form and adhesive nature of the

13   Arbitration Agreement.  Opposition, p. 17.  However, it is well-established that,

14   absent any additional indication of oppression or surprise, the "degree of procedural

15   unconscionability of an adhesion agreement is low," and accordingly, such

16   agreements will be enforceable so long as there is not a high degree of substantive

17   unconscionability.  *Serpa v. California Surety Investigations, Inc.*, 215 Cal. App. 4th

18   695, 703 (2013) ("[The] adhesive aspect of an agreement is not dispositive.")

19          Plaintiffs also claim that the Solution Channel Announcement was

20   "purposefully misleading," and take issue with Defendant's failure to attach the

21   Arbitration Agreement or a copy of the AAA rules to the announcement email.

22   However, the email was written in plain and unambiguous language: "By participating

23   in *Solution Channel*, you and Charter both waive the right to initiate or participate in

24   court litigation (including class, collective and representative actions)."  Knapper

25   Decls. I and II, Exh. A.  Finally, the Arbitration Agreement was easily accessible to

26   employees at all times on the company-wide intranet site.  *Id.* at ¶ 9.

27              2.   **The Arbitration Agreement Is Not Substantively**
                     **Unconscionable.**

28          "Substantive unconscionability focuses on the actual terms of the agreement

9

1   and evaluates whether they create an 'overly harsh' or 'one-sided' result.…

2   Substantive unconscionability 'may take various forms,' but typically is found in the

3   employment context when the arbitration agreement is 'one-sided' in favor of the

4   employer without sufficient justification.…" *Serpa*, 215 Cal. App. 4th at 703 (internal

5   citations omitted).   The Court concludes that the Arbitration Agreement is mutual, and

6   does not contain any one-sided provisions.   Instead, it applies broadly to all claims

7   either party has against the other arising from the employment relationship.   In

8   addition, the claims excluded from arbitration may be pursued by either party in

9   litigation.   The terms of the agreement are balanced: employees are not deprived of

10   the opportunity to conduct discovery and employees are not restricted in the types of

11   remedies they can pursue.   Thus, Plaintiffs failed to meet their burden of establishing

12   that the Arbitration Agreement is procedurally and substantively unconscionable.

13   *See Arguelles–Romero v. Superior Court*, 184 Cal. App. 4th 825 (2010) ("It is the

14   plaintiff's burden to introduce sufficient evidence to establish unconscionability.")

15          **C.     The Arbitration Agreement Covers Plaintiffs' Claims.**

16          Plaintiffs' Complaint alleges claims that are squarely within the scope of the

17   Arbitration Agreement.   Pursuant to the terms of the Arbitration Agreement, Plaintiffs

18   agreed to resolve "any dispute arising out of or relating to [their] pre-employment

19   application and/or employment with Charter or the termination of that relationship"

20   through binding individual arbitration. Knapper Decls. I & II, ¶ 10 and Exh. C.

21   Plaintiffs also specifically agreed to individually arbitrate "wage and hour-based

22   claims including claims for unpaid wages, commissions, or other compensation or

23   penalties (including meal and rest break claims, claims for inaccurate wage

24   statements, claims for reimbursement of expenses)," which are exactly the type of

25   claims Plaintiffs have brought on a class-wide basis in this Court. *Id.*

26

27

28

**D.     Plaintiffs Agreed To Waive Class Claims.**

Class action waivers are enforceable under both federal and California law.[3] *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) (upholding the enforceability of arbitration agreements containing class and collective action waivers of wage and hour disputes); *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 359-60 (2014) (enforcing class waiver and finding that California law to the contrary is preempted by the FAA). In this case, the Court concludes that the Arbitration Agreement contains a valid class action waiver. Specifically, the Arbitration Agreement contains an "Individual Claims Limitation and Representative, Collective, and Class Action Waiver," which provides in part: "[Plaintiffs] agree that both parties may only bring claims against the other party in their individual capacity and not as a plaintiff or class member in any purported class or representative proceeding[.]" Knapper Decls. I & II, Exh. C, pp. 1-2. Thus, the Court will dismiss Plaintiffs' class claims and will order the parties to arbitrate all nine causes of action alleged in Plaintiffs' Complaint solely on an individual basis.

**V.     CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration in its entirety. The Court hereby **DISMISSES without prejudice** Plaintiffs' class claims. Plaintiffs' remaining claims are ordered to arbitration in accordance with the Arbitration Agreement. This action is **STAYED** pending the outcome of those arbitrations, and the Clerk is ordered to administratively close this case. The parties shall file a joint status report with the Court every 120 days

//

//

//

---

[3] The four-factor analysis under *Gentry v. Superior Court*, 42 Cal.4th 443 (2007) is inapplicable here, as *Gentry* applies to agreements exempted from the FAA entirely.

11

1 | regarding the status of the arbitration proceedings, with the first joint status report due
2 | on April 9, 2019.
3 |
4 | Date:  December 14, 2018
5 |
6 | _____
  | HON. JOHN F. WALTER
7 |
8 |
9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Case No. 18-cv-02133-REB-MEH

MICHAEL SCARPITTI,

      Plaintiff,

v.

CHARTER COMMUNICATIONS, INC.,

      Defendant.

---

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

**Blackburn, J.**

      The matter before me is **Defendant's Motion To Compel Arbitration [#7],**[1] filed August 28, 2018.  I grant the motion.

### I. JURISDICTION

      I putatively have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

### II. STANDARD OF REVIEW

      "'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  ***Beltran v. AuPairCare, Inc.***, 907 F.3d 1240, (10th Cir. 2018) (quoting ***Howsam v. Dean Witter Reynolds, Inc.***, 537 U.S. 79, 83, 123 S.Ct. 588, 591, 154 L.Ed.2d 491 (2002)).  Conversely, the court is "require[d] . . . to enforce privately negotiated agreements to arbitrate, like other

---

[1]    "[#7]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

contracts, in accordance with their terms." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

The court's primary task, therefore, is to determine whether the parties agreed to arbitrate their dispute.[2] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Beltran*, 907 F.3d at 1251. That determination focuses on two considerations: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement. *See National American Insurance Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004); *Via Fone, Inc. v. Western Wireless Corp.*, 106 F.Supp.2d 1147, 1150 (D. Kan. 2000). Plaintiff here attacks the arbitration agreement on only the first of these two prongs.

### III. ANALYSIS

This case arises from the termination of plaintiff's employment with defendant on or about May 11, 2018.[3] Plaintiff has brought claims under Colorado law for wrongful termination and intentional infliction of emotional distress. Defendant maintains these claims are subject to arbitration. I concur, and therefore grant defendant's motion.

On October 6, 2017, defendant distributed to all active employees an email bearing the subject line "Charter's Code of Conduct and Employee Handbook." (**Reply**

---

[2] In some cases, the court also may be called on to consider whether any statute or policy renders the claims non-arbitrable. *Mitsubishi Motors Corp.*, 105 S.Ct. at 3355; *Williams*, 203 F.3d at 764. As plaintiff presents no argument to this effect, I do not consider the matter further.

[3] The parties dispute whether plaintiff was terminated or resigned. However, that fact is irrelevant for purposes of this motion.

**App.**, Exh. A.)  The email informed all non-union employees of defendant's intention to implement a program called "Solution Channel," described as allowing employees "and the company to efficiently resolve covered employment-related legal disputes through binding arbitration." (***Id.***)   A hyperlink within the email directed employees to a webpage where they could find a copy of the Solution Channel document.  (**See Motion App.**, Exh. A ¶ 9 at 2; Exh. B.)

The document itself describes Solution Channel as the exclusive means of resolving employment-related disputes covered under its terms.  Under the heading "Covered and Excluded Claims," the document stated generally:

> All disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), are covered by and must be resolved through Solution Channel, unless expressly excluded below.

(***Id.***, Exh. A at 5.)  Included "without limitation" in a specifically denominated list of covered claims were claims for unlawful termination.  (***Id.***)

Both the email sent to employees and the Solution Channel document itself also informed recipients they would be enrolled in and subject to the policy unless they opted out of the program within 30 days of implementation.  (**Id.**, Exh. A at 3; **Reply App.**, Exh. A.)  Otherwise, "participation in Solution Channel is a condition of consideration for employment with" defendant.  (**Motion App.**, Exh. A at 3.)  In case these provisions were insufficiently explicit, the document confirmed that participants in Solution Channel

3

waived any right "to initiate or pursue a covered claim against [defendant] . . . in a court of law or equity" or " to have a covered claim heard by a court, judge, or jury[.]" (*Id.* at 4.)

Plaintiff maintains the motion must fail because there is no proof he received or reviewed this email. This argument borders on specious, both factually and legally. The affidavit of defendant's Vice President of Human Resources Technology attesting to the fact that plaintiff was included on the distribution list for the email informing employees about Solution Channel is entirely competent to sustain its burden of proof to show the existence of a valid arbitration agreement.[4]

As plaintiff himself recognizes (*see* **Resp.** at 3), the burden thus shifts to him to raise a genuine dispute of material fact as to the making of the agreement, "using evidence comparable to that identified in Fed. R. Civ. P. 56." *Stein v. Burt-Kuni One, LLC*, 396 F.Supp.2d 1211, 1213 (D. Colo. 2005). Nevertheless, he apparently could not manage to commit his suggestion that he did not receive the email to an affidavit or declaration. Yet his mere *ipse dixit* is evidence of nothing. *See Martinez v. TCF National Bank*, 2015 WL 854442 at *2 (D. Colo. Feb. 25, 2015) ("[P]laintiff's assertion that she never received the [arbitration contract] is insufficient to overcome the presumption of delivery.").

Plaintiff's further suggestion that there is no evidence he opened this email or read its contents – another purported "fact" for which he provides no actual evidence – likewise is baseless. Although the Tenth Circuit appears not to have addressed this

---

[4] Nevertheless, defendant's production of the actual email sent to plaintiff removes any doubt as to this question.

4

issue, numerous federal courts have afforded the same presumption of delivery applicable to mail sent through traditional postal channels to email communications. *See, e.g.*, *Ball v. Kotter*, 723 F.3d 813, 830 (7th Cir. 2013); *American Boat Co., Inc. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005); *Gupta v. Morgan Stanley Smith Barney, LLC*, 2018 WL 2130434 at *3 (N.D. Ill. May 9, 2018); *Johnson v. Harvest Management Sub TRS Corp. – Holiday Retirement*, 2015 WL 5692567 at *3 (S.D. Ind. Sept. 25, 2015); *Corbin v. Affiliated Computer Services, Inc.*, 2013 WL 3804862 at *6 (M.D. Fla. July 19, 2013); *Dempster v. Dempster*, 404 F.Supp.2d 445, 449 (E.D.N.Y. 2005).  Now well into the second decade of the twenty-first century, in which email has become ubiquitous, I have no hesitancy in adopting this position and acknowledging the presumption that plaintiff received the email.  Plaintiff fails utterly to rebut that presumption

Having received notice of the arbitration agreement, plaintiff's "purported ignorance of the policy, whether willful or otherwise, does not absolve him from being bound by the agreement[.]" *Morris v. Milgard Manufacturing, Inc.*, 2012 WL 6217387 at *3 (D. Colo. Dec. 13, 2012). *See also Elsken v. Network Multi–Family Security Corp.*, 49 F.3d 1470, 1473-74 (10th Cir. 1995).  His failure to opt out within the time specified while continuing to work for defendant manifested his acceptance of the terms of the agreement. *See Frymire v. Ampex Corp.*, 61 F.3d 757, 769-70 (10th Cir. 1995) (interpreting Colorado law), *cert. dismissed*, 116 S.Ct. 1588 (1996); *Morris*, 2012 WL 6217387 at *3.

Plaintiff does not argue, nor could he, that his claims are not encompassed within the scope of that agreement.  His unlawful termination claim is specifically referenced as subject to arbitration.  (**Motion App.**, Exh. A at 5.)  His intentional infliction of emotional distress claim is plainly "related to" his employment.  (*Id.*)  Those claims thus both are referable to arbitration.  Defendant's motion therefore must be granted.

The Federal Arbitration Act provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending . . . shall on application of one of the parties stay the trial of the action . . ."  9 U.S.C. § 3.  I therefore will stay this action.  Nevertheless, pursuant to D.C.Colo.LCivR. 41.2, because no matters remain for this court to address while arbitration proceeds, I will administratively close this case, subject to reopening for good cause.

Finally, defendant seeks to recover, under the authority of Fed. R. Civ. P. 54(d)(1), the costs incurred in bringing this motion.  Pursuant to the rule, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."  FED. R. CIV. P. 54(d)(1). The rule thus "codifies a venerable presumption that prevailing parties are entitled to costs." *Marx v. General Revenue Corp.*, 568 U.S. 371, 377, 133 S.Ct. 1166, 1172, 185 L.Ed.2d 242 (2013) (footnote omitted).  "Notwithstanding this presumption, the word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." *Id.*  Nevertheless, if it decides to deny costs, the court must provide a valid reason. *Zeran v. Diamond Broad., Inc.*, 203 F.3d 714, 722

6

(10th Cir. 2000).

I perceive no valid reason for denying defendant its costs in this instance. Defendant indisputably is the prevailing party in this matter, and its success is not partial or qualified.  Moreover, defendant has presented evidence demonstrating that, in response to a demand letter received from plaintiff's counsel prior to the filing of this lawsuit (*see* **Motion App.**, Exh. B), defense counsel informed plaintiff's counsel that plaintiff's claims were subject to arbitration and that it intended to insist on its rights under the agreement (***id.***, Exh. C).  In a subsequent email, counsel for defendant laid out in detail, with citation to legal authority, its arguments, which mirror those advanced in this motion.  (***See id.***, Exh. D.)  Later that same day, plaintiff filed this lawsuit.  His weak and wholly unsubstantiated response to the motion demonstrates he had little factual or legal basis for doing so.  His failure to even address this aspect of the motion in his response similarly evidences that he has no arguments in contravention of awarding costs.  I therefore will exercise my discretion to award defendant its costs. *See* ***Stephan v. Brookdale Senior Living Communities, Inc.***, 2012 WL 4097717 at \*6 (D. Colo. Sept. 17, 2012).

THEREFORE, IT IS ORDERED as follows:

1. That **Defendant's Motion To Compel Arbitration** [#7],[5] filed August 28, 2018, is granted;

2. That the parties are ordered  to proceed to arbitration of plaintiff's claims;

---

[5]   "[#7]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

7

3.  That this case is stayed pending the outcome of arbitration;

4.  That defendant is awarded its costs, to be taxed by the clerk of the court

pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1;

5.  That under D.C.COLO.LCivR 41.2, this action is closed administratively; and

6.  That under D.C.COLO.LCivR 41.2, the clerk is directed to close this civil

action administratively, subject to reopening for good cause.

Dated December 7, 2018, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge

8